Next is McClam v. Verhelst. Good morning. I will hold back three minutes approximately, and of course, it's always variable depending upon the panel. And keep track of your own time as well. Yes. So let's go on with good morning. My name is Michael Kars, and I'm here on behalf of the appellant, Stephen McClam, II. We're here today because we believe the district court got it wrong. We believe the district court got it wrong because it failed to evaluate the evidence that was in favor of the non-moving party, Mr. McClam, and that there were genuine issues of material fact which precluded granting summary judgment to Mr. Verhelst. I think it's Verhelst. Anyway, on the record, there are so many disputed facts, not only between Mr. McClam and Mr. Verhelst, but even between Mr. Verhelst and his other correctional officer, Mr. Postma. He was the officer who witnessed the incident. What it is is that the evidence that was presented by Mr. McClam was sufficient enough to claim it was an unprovoked attack. But Judge Peterson agreed with that, right? And the district court's order takes all those facts in the light most favorable to your client and agreed that the force used was excessive, but thought that there wasn't a case that clearly established that in these circumstances. So what's wrong with that legal conclusion? What is the case that clearly establishes that this conduct would be unlawful? The real issue is the facts are unclear. There are disputed facts which the district court, in our opinion, made a credibility determination between the two individuals. For example, one of the issues was where was Mr. Verhelst on the landing when this incident happened? I mean, I can go through a litany of disputed facts, but the whole question was, is whether or not, as the district court said, whether it was an unjustified attack by a prison guard or whether it was a mistaken belief of a threat. And the factual issues in this case determined that there are some real questions as to whether or not it was a perceived fact. The mere fact that officer Posma said that officer Verhelst not only stepped on Mr. McClam's hand, but then kicked the box. And yet, Mr. Verhelst said, oh no, I just lightly tapped it with my foot. I mean, even in the investigation of the incident, Mr. Verhelst was found guilty of making false statements for his job. So the question goes, why is he making false statements? But it goes back even further. Mr. McClam, in his declaration on firsthand knowledge, stated that he was nowhere near the defendant when he was reaching for the paper towels. But the district court, I mean, both of the points you just mentioned, I mean, I'm looking at page 15 of the order, the district court said it would, it would assume that the defendant, that's Verhelst, was standing outside of plaintiff's reach. And it also said that he, you know, it wasn't a light tap. He came forward to stomp hard on the hand and held his foot there for several seconds. So it seems like the district court accepted your version of the facts on those points. But then it failed to imply the proper summary, or qualified immunity cases, which has to do with, what is it, Felicity McCarthy, Johnson v. Hines. But even if it's a general qualified immunity, unprovoked attacks, I mean, I would argue you don't even need a specific case because it is so outside the range of what is appropriate constitutionally. So when, you know, so what I was saying is that the district court still made determinations as to whether or not it was a mistaken belief of a threat. And yet we believe the evidence is confusing enough as far as the different parties as to, you can't make that determination. I mean, even under the district court's ruling on the constitutional violation, I don't see how it gets to the point where it says it's not an unprovoked attack by stating that he was out of reach, et cetera. This is a case for a jury, a true finder of fact, to determine what happened. We have credibility issues with Mr. McClammy regarding any of his statements and it's for the jury to determine what's the true, you know, what's the truth and whether or not there was a reasonable belief. I mean, Mr. Verhuis in his declaration claimed that he was surprised and reacted instinctively. Mr. McClammy said that he'd already reached for the paper towels once and got one. And then this is the second time. So I would argue that the district court may have got the constitutional violation right, but it got the qualified immunity issue wrong. And what were you mentioned? I think you mentioned Felix. What was the other case you mentioned? That's Johnson v. Hines. And that was, first of all, I mean, that was unpublished, but wasn't that a sexual assault? They shoved against a wall and sodomized with a flashlight and strip search. And you think that that case you think clearly establishes that stepping on someone's hand in these circumstances would be a constitutional violation? I have looked, and maybe this court has looked also, for very specific cases that would equate with stepping on a hand. And I agree that the claims in the other case are certainly, the damages were certainly higher, but the overall concept, which is unprovoked attacks. I mean, the one thing we don't want in our jails and prison systems are unprovoked attack by correctional officers. It's a hard job. I grant you that. A very hard job. I'm very familiar with the Washington prison system. But there are the proper methods to go about and the improper methods. And I would suggest if you take a look at the investigation report submitted by Mr. McClam with his declaration, you will see a very dedicated officer from the King County jail doing the investigation. No holds barred, interviewed everybody. And that's what you want in any sort of correctional where people are doing their job. An unprovoked attack, no matter what the facts are, has no place in our jails and prisons. And that's why it applies. So if I understand your argument, you're saying that the district court inappropriately credited the officer, Veldhuis, that he had mistaken belief that the prisoner was posing a security threat? That is correct. Okay. So you're saying that, so, okay, that makes sense.  I see that my time is up. All right. Thank you, counsel. Good morning. May it please the court. Carla Karlstrom, King County prosecutor representing Officer Franz Verhulst in this matter. Your honors, the burden is on the plaintiff to establish that the right violated was clearly established to point to some case that would have put a reasonable officer on notice that his actions were unlawful. Some case that would have put a reasonable officer on notice that when an inmate reaches towards or for a part of that officer's body, that that officer is not allowed to react. Well, see, you said that when an inmate reaches for the officer's body, now there you're not crediting the plaintiff's version of the facts. Your honor, actually, I am. And this court does need to do that. So what I am saying is that officer that Mr. McClam reached towards in the direction of Officer Verhulst's body, this court, for the purposes of this appeal, needs to assume that that Mr. McClam didn't get anywhere near the body and that Officer Verhulst stomped on his hand before that hand got anywhere near the body. So let's stay with that version of the facts when we're discussing the case, because Mr. McClam did say that he reached, that he never even got close with his hand to the officer and Officer Postema, the one who gave permission. Am I saying that correctly? Postema? I think so. I think so. Your honor. Said that Mr. McClam's hand was in the box when the officer reacted and he thought the officer overreacted as well. So is it the degree of harm that's at issue in this case that's problematic? Like if he had, like, whacked him on the head with a baton, causing bleeding and severe injuries, then, in your view, that would be a different case. But here it's just a stomping on the hand, and so, therefore, the law is not clearly established? No. That's not our position. Our position is that there is no clearly established case that tells an officer in a correction setting that they can't react when they think somebody is about to assault them. It doesn't matter that he didn't get anywhere near him. What if the jury believed Mr. McClam that the officer didn't think he was about to be assaulted? Instead, he maliciously lashed out? I think that would go to the first prong, your honor. The second prong of the qualified immunity analysis, it really doesn't matter what Officer Verhulst's specific motivation or intent was. This court needs to look at what a reasonable officer would have been on notice of. The thoughts about Mr. or Officer Verhulst and what a jury thinks goes to the first prong, not to the second prong. Don't you think looking at the objective standard, if the jury credited everything Mr. McClam said that the jury could believe his version, that he was nowhere near the officer when this incident occurred? I think a jury could still find qualified immunity, and I think that's why this court needs to, because the qualified immunity doctrine is designed to allow officers, officials to make reasonable but mistaken mistakes. I mean, Officer Verhulst may have overreacted. He may have been mistaken as to what was going to happen, but that is why qualified immunity exists. Well, I think you've just made an argument in support of sending this case to trial because it depends on which version the jury credits. No, your honor. And I want to make very clear the jury, this court, this court, let's start with this court. This court has to assume that when Mr. McClam was reaching towards the paper towel box and going into the paper towel box that he didn't get near Officer Verhulst's feet. That is not contradictory, nor is that a dispute that has to be resolved from Officer Verhulst, who decides it's coming towards him. So he steps on him. The record is very clear. But counsel, don't we have to also credit if that the attack was then unprovoked? Well, the argument is this was not unprovoked in the sense that it's equivalent to cases that the district court cited, where for absolutely no reason whatsoever, a correction officer throws someone across the hallway. That does seem to be Mr. McClam's argument that he was stomped on for no reason. But but he made a movement in the direction of the officer. And I think that's the difference between this case and other cases where there truly is no provocation. There was a fizzled action by Mr. McClam, and it's not disputed that it was in the direction of Mr. Verhulst, of Officer Verhulst, based on the record of where the paper towel box was near the railing, which would have been in front of Officer Verhulst. So this inmate in a correction setting is reaching in the direction of the officer. The officer reacts and perhaps he reacts mistakenly or overreacts. But that is allowed under the qualified immunity doctrine. This court has to give deference to the discretion officers have in those types of situations to make mistakes. And it may have been a mistake. But would he have known that when a hand is coming towards him on a landing? I guess that's my problem. Do we have to credit it as a mistake? What if it was intentional? Well, first of all, I don't think there's any evidence that it was intentional on the record that I think that's Mr. McClam's theory. But Mr. Clam can't be an officer Verhulst mindset. So that really is not something that he can say. But there's nothing objective, though. I'm sorry. A jury could believe him. A jury could believe him, but this court, again, in the second prong of the qualified immunity analysis, it really isn't about Officer Verhulst. It is about what a reasonable officer would be on notice that he could or couldn't do. The district found the first one. The jury could believe that Officer Postema is a reasonable officer. Officer Postema said that as soon as McClam put his hand inside the box, Verhulst, am I pronouncing that correctly? Verhulst placed his foot on top of the box and started kicking it. That's a compelling argument. It was an unprovoked attack. And that's up to the jury to figure that out. I think the record is that as as Mr. McClam was coming forward into the box, Officer Verhulst started reacting to that. And yes, at the time contact was made, Mr. McClam's hand was in the box. I don't think the record underlying the undisputed account says that his hand got all the way into the box and was sitting there prior to Officer Verhulst's foot stomping on his hand. So I would argue that's not the record below. That is not what Officer Postema says. The record from the photos that this court has seen where Mr. McClam notes with an X where Officer Verhulst is and the undisputed record that the paper towel box is in front of the railing. So it's between Officer Verhulst and the railing. And Mr. McClam is down below and reaches forward with his hand towards the box. Officer Verhulst begins to react by the time the foot stomps on Mr. McClam's hand. Indeed, it is on or in the box based on Officer Postema. However, again, plaintiff has not shown any clearly established law that an officer can't react in a situation where an inmate reaches out to him suddenly in a correction setting. And again, in the Eighth Amendment context, the Supreme Court has said in multiple cases that unprovoked assault that's done maliciously, sadistically without a good faith effort to maintain discipline in the prison setting is a constitutional violation. Can't those cases support clearly established law in this context? I would argue no, Your Honor, because again, this is not there's no evidence. This is wanton and malicious. The facts below are that as Mr. Clan reached his hand out, Officer Verhulst came to stomp on it, not that it was sitting in the tissue box and then his hand came down on top of it. So it is not wanton and malicious as those U.S. Supreme Court cases. So boils down to your argument is that under these facts construed in favor of Mr. McClam, no reasonable jury would find that it was not done maliciously. That's the argument. Yes, Your Honor, because Officer Verhulst was reacting as off as Mr. McClam was coming towards him toward the box. And yes, the contact happened at the box. But a reasonable jury would see nothing that would indicate to an officer that it's unlawful to react to protect yourself or others when an inmate is suddenly reaching in the direction of your body, whether he ultimately got there or not, whether Mr. McClam or Officer Verhulst was overreacting or mistaken. That's hindsight. That's looking back in hindsight. This court needs to look at things in the context of the officer, a reasonable officer, and give appropriate deference to those decisions that have to be made sometimes in very quick time in a very potentially dangerous setting. Yeah, my problem with that argument is it seems if we credit Mr. McClam that that that Mr. Verhulst never thought he was in danger. Again, don't we have to credit that theory of the facts again? No, because it doesn't matter what Mr. or Officer Verhulst thought at that point. The second prong is truly just about what a reasonable officer would think is or is not OK in a correction setting when an inmate does something towards your body. That is what needs to be out there. There has to be some case out there in some context close enough. It doesn't have to be exactly specific, but close enough to where there is some provocation by Mr. McClam. And I'm not saying he intended to harm him. He did not. But some movement by Mr. McClam towards Officer Verhulst, there has to be some case telling an officer, you know what, you don't get to react to that. Now, Officer Verhulst was clearly mistaken and it was likely an overreaction. And those are the facts that you have to take. Or the jury could could think that the officer used the reaching for the paper towel as a pretextual excuse to stomp on his hand. We don't know what a jury is going to do with that. Yeah, the facts below, I think the undisputed facts and the facts in light, most favorable Mr. McClam don't support that. So I believe this court can say and hold firmly that without some clearly established case law, this officer couldn't be on notice. If this court were to hold that that is enough to say there's no qualified immunity, it means that no corrections officer can respond when they think they're possibly under physical threat. And understandably, in the first prong, the district court took into account a lot of the things your honors are saying, that that Officer Verhulst wasn't truly in danger, he could have stepped back. And that went to the objective factual considerations on the facts of this case in the first prong. But in the second prong, officers have to be given deference. And this is why this doctrine exists to make these decisions and even make mistaken decisions. And you're right, if they are clearly intentionally maliciously trying to break the law, that doctrine doesn't doesn't protect them. But a reasonable jury would not find that in this setting. Officer Verhulst was on a landing of a stairway, not very big. And if he believed Mr. McClam was going to grab his leg, he could have fallen down those stairs. It could have caused a security issue. Officers in those settings have to be allowed to react. That's why there is no clearly established law that they can't. This was not a malicious, intentional act. By looking at the facts in most favorable, Mr. McClam, Mr. McClam can't go into Officer Verhulst's mind. The fact that Mr. McClam reached towards the officer meant that all the case law saying unprovoked attacks don't apply here. Correct. This was not an unprovoked attack. And I acknowledge in the facts, most favorable Mr. McClam, he wasn't attacking Officer Verhulst. And later, I think Officer Verhulst recognized that. And that's why he didn't give him an infraction. But at the moment, in that second, this inmate is reaching towards an officer's leg, doesn't get anywhere near him, but is reaching towards him. And he reacts suddenly in the moment. Overreacts. It's a mistake. Stomps on the hand. That has to be protected unless there is a case out there that says you can't do that. So yes, I would distinguish this from the cases in which there was truly unprovoked actions by corrections officers towards inmates, where they did nothing like the Lolly case and the Felix case, they're tying up an inmate for hours with no water. An officer decides to throw an inmate across the hallway just because he appears to be angry at him. That's not provoked in any way. This is a physical provocation by reaching towards him. That's how I would distinguish this case. And I think this court needs to give deference to officers in that setting. Absent plaintiff coming forward with a clearly established law, which plaintiff has not done, does not appear to be out there in this setting. And if this court were to hold that way, this officer would be being held to a standard that is not fair because there's nothing out there to tell him. He can't react to protect himself or others in such a setting. And I think recognizing that this is about a reasonable officer and not going in to Officer Verhulst's mental state is important for that prong. And a jury would be instructed accordingly. That is not where you take into account that. So this court can affirm the district court on that because of looking what a reasonable officer would know with the case law as it currently exists. Thank you, counsel. Our questions actually took you over time, but let me see if my colleagues have any additional questions. Thank you. Thank you very much. Let's round it up to three minutes rebuttal. Thank you. I have a couple of points to make, but first I'll go right to where I consider the crux of the matter. And that is that it's, if you're looking at what a reasonable officer would think, the facts are important. And I think some of the facts are really very important. For example, Mr. Verhulst claimed in his declaration that the hand was on top of the box. Mr. McClam and officer Postma said it was in the box. So I even questioned the concept that he was reaching towards officer Verhulst. I think that was a reasonable officer would not find that that was a provocative movement and that I think that the facts do make a difference. And the facts is what a reasonable officer, if they felt that way, would they make a verbal warning or a verbal comment or anything like that? And there's nothing on the record that says that. Um, it just, can I ask, under Mr. McClam's theory, where was the officer with respect to the box? He was away from it, but I don't know exactly left, right, or center, if that makes sense. How many feet do we know? Uh, there is, there are no measurements, but the pictures, which weren't very good, but the pictures show that there was on a landing with metal bars and cages and Mr. McClam was supposedly six foot four. The question was, I don't know whether he could reach or not and get through the bars, I mean, would that given him a reasonable officer, a sense of security? Um, but this is really, you know, a factual question for whether or not it was a reasonable, but mistaken belief or an unreasonable belief and, uh, actually an unprovoked attack. And that is what we're claiming here today. Is that- Where was, um, Mr. Postema standing? He was standing to the side, as I understand it, looking at the picture and all. I believe he was standing to, uh, Mr. McClam's left and obviously within view. And I would make a note that in both of his- Any indication on how far away? Uh, not that I remember, but I do remember that he actually issued two officer reports five months apart because the investigators wanted more information or wanted verification on some questions. And both of those, uh, reports report the same, same incidents. The same incidents that when, uh, officer Verlas was asked by, uh, Sergeant Wilkes during the investigation about officer Postema's comments, he just basically punted and, uh, did not give, uh, officer, uh, Postema any, you know, any credit for seeing, actually seeing the event. So that is why we believe that the district court got it wrong as regards to qualified immunity and having a specific case with provocation, there was no provocation, and that is the point that we're making here today. We, we asked the court to remand this case back to the district court for trial. Thank you, counsel. Thank you.
judges: NGUYEN, MILLER, BUMATAY